480 S.E.2d 150

Jose Ismael GRANADOS

v.

WINDSON DEVELOPMENT CORPORATION/WINDSON CARPENTERS, INC. and American Fire and Casualty Insurance Company.

Record No. 0892–96–4.

Court of Appeals of Virginia,
Alexandria.

Jan. 28, 1997.

Rehearing En Banc Granted March 19, 1997.

Arturo Hernandez, for appellant.

Dawn E. Boyce (Trichilo, Bancroft, McGavin, Horvath & Judkins, P.C., on brief), Fairfax, for appellees.

Present: WILLIS, FITZPATRICK and ANNUNZIATA, JJ.

FITZPATRICK, Judge.

Jose Ismael Granados (claimant) appeals from a decision of the Workers' Compensation Commission denying him benefits because he misrepresented his ability to work legally in the

United States. Claimant contends that the commission erred in using his "immigration status" to deny him benefits. We affirm the commission's decision.[1]

## BACKGROUND

The evidence is uncontroverted. On January 31, 1995, claimant entered into a contract for hire with employer. Claimant speaks Spanish but does not speak or read English. At the time of hire, Cleo Heavener (Heavener), employer's representative, requested claimant to provide a Social Security card and another form of identification as required by the Immigration and Naturalization Services. Claimant produced the requested items and signed an Employment Eligibility Verification Form. Relying on this information, Heavener hired claimant and conducted no further inquiries as to his employment status. All of the information provided was false. Claimant had no valid driver's license, Social Security card, work authorizations, green cards, visas or any other documentation reflecting an eligibility to work in the United States as of February 13, 1995. Claimant testified that he is not, and was not as of February 13, 1995, eligible to work in the United States. This status remained unchanged.

On February 13, 1995, claimant broke his right ankle and was disabled from February 14, 1995 to June 7, 1995, at which time his treating physician released him to light duty work. Because of claimant's illegal work status, he was unable to market his remaining capacity to work. Claimant filed a claim for benefits on February 27, 1995. At the hearing before the deputy commissioner on August 11, 1995, employer asserted that claimant was ineligible to receive disability benefits under the Workers' Compensation Act, because he misrepresented to the employer that he was legally eligible to work in the United States at the time he was hired.

---

1. Because we affirm on the "eligibility" question, we do not address the "discovery" issue raised by claimant.

The deputy commissioner found that employer had established the defense of fraud, because claimant "materially misrepresented his employment eligibility by (1) providing a false social security card; (2) providing a false alien immigration card; and (3) signing the Employment Eligibility Verification Form."

The full commission affirmed the decision and stated:

In the final analysis it is clear that [employer] properly relied on the documents presented. Had [the employer] been aware of claimant's true alien status, he would not have hired him. The claimant cannot now complain that the employer was taken in by the forged documents which he presented to obtain his employment.

Additionally, the commission found as follows:

[t]he claimant freely admitted that he did not have a valid Social Security Card or Alien Registration Card and that the ones he presented were basically forged. At the same time, *Heavener testified convincingly* that he did all that could reasonably be expected of an employer in requesting proper documentation of status and that he relied on the documents presented.... In the final analysis, it is clear that Heavener properly relied on the documents presented. Had he been aware of the claimant's true alien status, he would not have hired him.

(Emphasis added.)

Although claimant does not dispute that he misrepresented the status of his work eligibility, he contends that the commission erred in failing to award him benefits. Claimant asserts that an employer-employee relationship existed despite the misrepresentation, and the employer did not prove any causal connection between claimant's misrepresentation and his injury.[2]

---

2. Additionally, claimant argues that the commission denied him benefits solely because of his immigration status and attempts to make an equal protection argument. Because we hold that claimant was not denied benefits due to his immigration status, this argument is without merit. *See Manis Constr. Co. v. Arellano*, 13 Va.App. 292, 295, 411

## CAUSAL CONNECTION

 In Virginia, to successfully establish the defense of fraudulent misrepresentation and bar a claim for compensation benefits, an employer must prove: " '(1) the employee knew that the representation was false; (2) the employer relied upon the false misrepresentation; (3) such reliance resulted in the consequent injury; and (4) there is a causal relationship between the injury in question and the false representation.' " *Billy v. Lopez*, 17 Va.App. 1, 4, 434 S.E.2d 908, 910 (1993) (quoting *Grimes v. Shenandoah Valley Press*, 12 Va.App. 665, 667, 406 S.E.2d 407, 409 (1991)).

 Generally, we construe the "causal relationship" prong as referring to a connection between a claimant's initial false representation regarding his physical condition or health and a subsequent injury suffered while employed.[3] *See, e.g.,*

---

S.E.2d 233, 235 (1991) (claimant's status as an illegal alien does not exclude him from workers' compensation benefits; rather, his "resulting inability to properly satisfy requirements imposed on every employee/claimant under Virginia law" will preclude him from the Act).

3. Virginia follows the "majority view" that "[a] false representation as to *physical condition* or health made by an employee in procuring employment will preclude workers' compensation benefits for an otherwise compensable injury if a causal relationship between the *injury* and the false representation is shown and if it is also shown that (1) the employee knew the representation to be false, (2) the employer relied upon the false representation, and (3) such reliance resulted in the consequent injury to the employee." *McDaniel v. Colonial Mechanical Corp.*, 3 Va.App. 408, 411–12, 350 S.E.2d 225, 227 (1986) (emphasis added). *See also* 1B Arthur Larson, *The Law of Workmen's Compensation* § 47.53 (1996).

In addressing the "causal connection" requirement in fraudulent misrepresentation cases, the courts of other states use different approaches. First, some do not adopt the three-prong test articulated in *Larson*, but defer to their legislatures to provide a defense for fraud. Others adopt the *Larson* test, but require the employer to prove the causal link by more than mere testimony stating that the claimant would not have been hired absent the misrepresentation. *See Dunnell v. Robbins Warehouse*, 465 So.2d 648 (Fla.Dist.Ct.App.1985). Finally, many employ the test adopted by Virginia and place the burden on the employer to show a causal connection between claimant's misrepresentation and his subsequent injury. These states allow the employer's showing of reliance on the misrepresentation by hiring and employing

*McDaniel v. Colonial Mechanical Corp.*, 3 Va.App. 408, 350 S.E.2d 225 (1986) (finding a causal connection between an injury involving back pain and a misrepresentation on a job application that claimant had no specific health problems which would prevent him from working). In the instant case, however, the causal prong is unrelated to a physical impairment; here, the connection is between claimant's total inability to work legally and the injury he received while unlawfully employed. " 'If material misrepresentations ... are made by the prospective employee to the prospective employer and *employment is afforded on the basis of misrepresentations* to the detriment of the employer it is only right and just that compensation benefits be denied.' " *Id.* at 414, 350 S.E.2d at 228 (quoting *Hawkins v. Lane Co.*, 49 O.I.C. 144, 147 (1967)) (emphasis added).

*Manis Constr. Co. v. Arellano*, 13 Va.App. 292, 411 S.E.2d 233 (1991), a factually similar case, provides the analytical framework for the resolution of this case. In *Manis*, the claimant worked illegally in the United States without proper documentation for several years. His employer knew nothing of claimant, personally or otherwise, and the record disclosed no circumstances sufficient to attribute notice of claimant's immigration status to the employer. Similar to the instant case, employer had no notice of claimant's illegal status. Based on these facts, we held that claimant's "pursuit of *unlawful employment* in this country is not an acceptable means of marketing his ... *work capacity.*" *Id.* at 293, 411 S.E.2d at 234 (emphasis added). "Pursuant to the Immigration Reform and Control Act of 1986 (IRCA), [claimant] could not be lawfully employed and legally work in this country, absent a change in his status." *Id.* at 294, 411 S.E.2d at 235. "It [was] *not* [claimant's] *status as an illegal alien* which exclude[d] him from the benefits of the Act but, rather, his resulting inability to properly satisfy requirements imposed on

claimant to establish the causal relation to the work-related injury. *See, e.g., Bean v. Hungerford Mechanical Corp.*, 16 Va.App. 183, 428 S.E.2d 762 (1993).

every employee/claimant under Virginia law." *Id.* at 295, 411 S.E.2d at 235 (emphasis added). In denying benefits, we "refused to sanction a violation of one law by approving it as compliance with another." *Id.*[4] This rationale applies to the instant case.

Our recent case of *Billy v. Lopez,* 17 Va.App. 1, 434 S.E.2d 908 (1993), which resulted in an award of benefits, also turned on the issue of an illegal alien's representation of his eligibility to work lawfully in the United States. However, *Lopez* is clearly factually distinguishable from the instant case. In *Lopez,* the employer did not require claimant to produce proper identification to demonstrate his legal work status prior to hire and testified he would have employed claimant whether or not he had misrepresented his lawful status. Most importantly, prior to the injury, claimant subsequently obtained legal authorization to work and informed the employer of his corrected legal status. Accordingly, we held that "although [claimant] initially misrepresented his work eligibility status, his subsequent receipt of legal authorization to work and notice to employer prior to the injury *cured the misrepresentation." Id.* at 5, 434 S.E.2d at 911 (emphasis added). "When an illegal alien who misrepresents his eligibility status at the time of hire subsequently obtains legal status, there is *no longer a causal connection* between the false statement and the consequent injury." *Id.* (emphasis added).

In *Lopez,* the causal connection existed until it was "cured." Unlike *Lopez,* where there was "simply no evidence in the record that [claimant's] alien status was in any way related to

---

4. In *Manis,* we distinguished *Francisco v. Formwork Services, Inc.,* 65 O.I.C. 232 (1986). "In *Francisco,* the claimant was a direct employee of the employer, had direct contact with the employer, was known personally to the employer and spoke 'little English.' Nevertheless, the employer never inquired into the employee's work eligibility in the United States.... [T]he deputy commissioner found that the employer had hired the worker 'at its own peril' and may not now use the 'illegal status' as a defense to his claim." *Manis,* 13 Va.App. at 295, 411 S.E.2d at 235 (quoting *Francisco,* 65 O.I.C. 232). We agree that an employer who participates, either actively or passively, in an employment deception cannot later claim protection under the Act.

the consequent injury," in this case, credible evidence supports the commission's finding of a causal connection between claimant's misrepresentation and injury. Employer established that he relied on claimant's misrepresentations to his detriment by continuing to employ claimant through the date of his injury.

> Moreover, claimant never "cured" his misrepresentation: [T]here was a causal relationship between the misrepresentation and the injury because without the misrepresentation there would not have been an employer-employee relationship at the time of the accident. In this regard we are fully aware that under normal circumstances a casual [sic] relationship is established through an injury to the same portion of the body as that about which the employee had misrepresented himself or herself on the application. However, in this particular case wherein the falsehood was directly related to the eligibility to work with criminal sanctions outstanding . . . this is sufficient to meet the last element of the defense. . . . [T]he employer complied with its obligations . . . and thus the claimant should not benefit from his fraudulent procurement of employment.

*See Bilbao v. Dee Shoring Co., Inc.,* 66 O.I.C. 53, 56–57 (1987).

█ For a person to receive benefits under the Workers' Compensation Act, he or she must establish a valid contract of hire. *Behrensen v. Whitaker,* 10 Va.App. 364, 392 S.E.2d 508 (1990). "Pursuant to the Immigration Reform and Control Act of 1986 (IRCA), [an illegal alien] could not lawfully be employed and legally work in this country, absent a change in his status." *Manis,* 13 Va.App. at 294, 411 S.E.2d at 235. Because claimant did not "cure" his illegal status, he was ineligible to lawfully enter into the contract for hire.

█ "Findings of fact by the commission are conclusive and binding on an appellate court if supported by credible evidence." *Id.* The evidence clearly established that (1) claimant intentionally misrepresented that he was legally able to work at the time of his hire; (2) that employer reasonably relied on the information provided by claimant in making its employ-

ment decision; and (3) but for claimant's hire he would not have been injured in the course of the employment.

Accordingly, credible evidence supports the commission's decision to deny claimant benefits.

*Affirmed.*

ANNUNZIATA, Judge, concurring in the result.

I concur in the majority's decision affirming the commission's denial of benefits to this claimant. Claimant, *partially disabled* as a result of an employment accident, is not entitled to benefits under the Virginia Workers' Compensation Act (the Act) because, as an undocumented alien, he cannot legally market his remaining work capacity. *See Manis Constr. Co. v. Arellano,* 13 Va.App. 292, 294, 411 S.E.2d 233, 235 (1991).

I write separately, however, because I disagree with the majority opinion to the extent it holds that claimant's misrepresentation as to his eligibility for employment is a bar to compensation. The majority's analysis of and decision regarding the denial of eligibility based on claimant's misrepresentation and on his entering an illegal contract of hire are contrary to our precedent.

The majority's decision is premised on the absence of a legal contract of hire. Relying on the Immigration Reform and Control Act of 1986 (IRCA), which prohibits employers from hiring undocumented aliens, the majority reasons that because claimant could not lawfully be employed, he could not lawfully enter into the contract for hire and, therefore, is not an "employee" entitled to benefits.

However, the illegality of an employment contract does not of itself destroy compensation coverage. *See* 1B A. Larson, *The Law of Workmen's Compensation* § 47.51 (1995). The majority's reasoning ignores the express language of Code § 65.2–101 defining "employee" as *"[e]very person ... in the service of another under any contract of hire."* (Emphasis

added [5]). The majority also ignores the distinction drawn in workers' compensation cases "between contracts that are illegal in the sense that the making of the contract itself violates some prohibition, and contracts that call for the performance of acts that are themselves violations of penal laws." *See* 1B Larson, *supra* § 47.51. "The former will ordinarily support an award of compensation; the latter will not." *Id.; see also Fernandez–Lopez v. Cervino, Inc.*, 288 N.J.Super. 14, 671 A.2d 1051 (App.Div.1996).

> [W]e distinguish between work which, in and of itself, violates the law and work which, although lawful, is engaged in by a person under a disability to do it. The former situation encompasses illegal work, such as bookmaking and all other types of criminal conduct. . . . One doing such work is not in an occupational status. . . . Plaintiff, [an undocumented alien] however, did not do that kind of work. His job was legal, although he was forbidden by law to do it.

*Fernandez-Lopez*, 671 A.2d at 1054 (citation omitted).

The principle that the illegality of a contract for hire does not preclude the status of "employee" within the meaning of the Act, and therefore does not bar compensation, was established in Virginia in the context of addressing a minor's right to compensation under the Act, prior to the legislature's decision to specifically include minors as "employees." *See Humphrees v. Boxley Bros. Co.*, 146 Va. 91, 108, 135 S.E. 890, 895 (1926); *Nolde Bros. v. Chalkley*, 184 Va. 553, 568, 35 S.E.2d 827, 834 (1945). As stated by the Virginia Supreme Court, the nature of the relationship between the parties for the purpose of determining coverage under the Act is not determined by the method adopted by an individual in securing employment from an employer, even when such employment is secured by and is based on employee misrepresentations. *Humphrees*, 146 Va. at 104, 135 S.E. at 893–94. The *Humphrees* Court agreed with the employer's contention that

---

5. The issue here is not whether there was a contract for hire; there clearly was. Rather, the issue concerns the implication of the illegality of that contract on claimant's right to compensation under the Act.

the contract violated the statute and was absolutely prohibited, but it nonetheless held that the minor was covered by the Act. *Id.* at 100–08, 135 S.E. at 892–95. The Court cited with approval the views of an earlier case decided by the New York Court of Appeals:

> Irrespective of the fact that the plaintiff secured employment by misrepresentation as to his age, and that defendant omitted the exercise of due diligence to ascertain his age, when plaintiff entered upon the service of the defendant in consideration of a compensation to be paid him therefor, the relation of employer and employee existed between them.

*Id.* at 103, 135 S.E. at 893. In reaching its decision, the *Humphrees* Court restated the public policy of remediation underlying the Act's passage and the requirement that "[t]he statute ... be liberally construed to promote its beneficent purpose." *Id.* at 106, 135 S.E. at 894 (citation omitted).

The same analysis applies here. While public policy considerations might support a distinction between minors employed under illegal contracts of hire and undocumented aliens so employed, the preclusion of coverage based on status is a matter for legislative action. I find no basis in current law for this Court to draw such a distinction.

Furthermore, based on the distinction between those employment contracts which are illegal in their making and those which call for the performance of an illegal act, the illegality of employment which has been obtained by the making of a false statement will not of itself destroy compensation coverage. *See* 1B Larson, *supra* § 47.53.

> What seems to be emerging, in place of a conceptual approach relying on purely contractual tests, is a common-sense rule made up of a mélange of contract, causation, and estoppel ingredients.

*Id.*

In Virginia, the mélange consists of four parts. To establish the defense of fraudulent representation as a bar to a claim for compensation under the Act, an employer must prove that (1) the employee knowingly made a false representation; (2)

the employer relied upon the false representation; (3) the employer's reliance resulted in the consequent injury; and (4) a causal relationship exists between the injury in question and the false representation. *See Billy v. Lopez,* 17 Va.App. 1, 4, 434 S.E.2d 908, 910 (1993); *Grimes v. Shenandoah Valley Press,* 12 Va.App. 665, 667, 406 S.E.2d 407, 409 (1991); *McDaniel v. Colonial Mechanical Corp.,* 3 Va.App. 408, 411–12, 350 S.E.2d 225, 227 (1986) (citing 1B Larson, *supra,* § 47.53).

I agree with the majority that "the evidence clearly established that (1) claimant intentionally misrepresented that he was legally able to work at the time of his hire; (2) employer reasonably relied on the information provided by claimant in making its employment decision; and (3) but for claimant's hire he would not have been injured in the course of the employment." I disagree, however, that such evidence establishes a relationship between the injury in question and the false representation sufficient to preclude compensation.

As an initial matter, I believe the majority's reliance on *Lopez* in support of its conclusion is misplaced. This Court in *Lopez* reaffirmed the well-established principles governing the issue of causation and did not establish a new rule. In finding causation had not been proved, we found that in hiring the employee, employer did not rely on employee's misrepresentation regarding his legal eligibility for work. *Lopez,* 17 Va.App. at 3–4, 434 S.E.2d at 910. We further found that because the employee subsequently obtained legal status, he "cured the misrepresentation." *Id.* at 5, 434 S.E.2d at 911. In effect, *Lopez* turns on a finding that, as a result of the employee's subsequent legal status, the issue of misrepresentation was effectively "removed" from the case.

Furthermore, it is a truism in every compensation case that, "but for [the employee's] hire he [or she] would not have been injured in the course of the employment." Contrary to the majority's rule, however, our cases make clear that such a "but for" causal relationship between the hiring procured by the misrepresentation and the injury is not sufficient to bar

compensation. *See Grimes,* 12 Va.App. at 667, 406 S.E.2d at 409 (refusing to deny benefits solely because employee would not have been hired but for the misrepresentation); *McDaniel,* 3 Va.App. at 412, 350 S.E.2d at 227 (same).

Rather, the determinative relationship, that which will bar compensation, is the relationship between the substance of the information misrepresented, the condition or status of the employee, and the injury that results as a consequence of the employment. Significantly, in our discussion of causation in *Lopez,* we relied on *Grimes* and *McDaniel,* two cases which stand for the proposition that the causal relationship required to bar compensation must be established by evidence that the condition which the employee misrepresented directly figures in the injury. *Compare Grimes,* 12 Va.App. at 667–68, 406 S.E.2d at 409 (finding no causal relationship between claimant's lumbo-sacral back injury and misrepresentation as to existence of prior "backaches" where prior back pain was caused by medical problems unrelated to back), *with McDaniel,* 3 Va.App. at 413–14, 350 S.E.2d at 228–29 (finding causal relationship between injury involving back pain radiating into hip and leg and misrepresentation where claimant, who had been unable to work at prior jobs because of back pain radiating into both legs, stated in job application that he had no specific problems which would prevent him from working). *See also* 1B Larson, *supra* § 47.51 (causal relationship exists when there is a misrepresentation of physical condition and the condition figures in the injury).[6]

A requirement that a causal relationship exist between the condition or status misrepresented and the resulting injury comports with well-established principles governing workers' compensation cases in Virginia. The Act effects a compromise between employer and employee, which is "to the advantage of

---

6. It is noteworthy that *Lopez* applied the use of the test applicable to false representations of physical condition to a case, such as this one, involving a false representation of circumstances unrelated to physical condition. 17 Va.App. at 5, 434 S.E.2d at 911. In *Lopez,* this Court found no causal relationship between claimant's severe spinal cord injury and misrepresentation as to alien status. *Id.*

the employee." *E.g., Humphrees,* 146 Va. at 95, 135 S.E. at 891. Its purpose is to compensate an employee, regardless of fault, for "the loss of [the] opportunity to engage in work." *E.g., Burlington Mills v. Hagood,* 177 Va. 204, 210–11, 13 S.E.2d 291, 293 (1941). Thus, an injured employee is compensated for his or her subsequent inability to earn a living, notwithstanding the fact that the employee would not have been injured but for some wrongdoing. However, although the compromise favors the employee, fairness dictates that an employer not be required to compensate an employee for an injury which results from a condition which the employee misrepresented to the employer.

> "Under the Virginia Workmen's Compensation Law, the employer takes the employee as he is and if the employee is suffering some physical infirmity, which is aggravated by an industrial accident, the employer is responsible for the end result of such accident. Under such circumstances, there is compelling reason for the employer to ascertain the physical condition of the prospective employee before entering into the employment contract. If material misrepresentations as to his physical condition are made by the prospective employee to the prospective employer and employment is afforded on the basis of misrepresentations to the detriment of the employer it is only right and just that compensation benefits be denied."

*McDaniel,* 3 Va.App. at 414, 350 S.E.2d at 228 (quoting *Hawkins v. Lane Co.,* 49 O.I.C. 144, 147 (1967)). Striking a balance between compensating an employee regardless of fault and treating an employer fairly requires that benefits be denied only when the employee's misrepresentation figures in the resulting injury.

Here, claimant's status as an undocumented alien precludes him from obtaining future employment and thus renders him legally incapable of marketing his residual work capacity. On this basis, benefits are properly denied, and I concur in the result. However, claimant's misrepresentation as to his legal eligibility for employment is not a ground to deny him benefits

because his misrepresented status did not figure in the injury he sustained while he worked for the benefit of employer.

## UPON A PETITION FOR REHEARING EN BANC BEFORE THE FULL COURT

On February 12, 1997, came the appellant, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on January 28, 1997, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on January 28, 1997, is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellant shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.